THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARTIN C. FITZPATRICK, Defendant-Appellant.

Fifth District    No. 81-229

Opinion filed July 14, 1982.

Randy E. Blue and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Martin N. Ashley, of State's Attorneys Appellate Service Commission, and Robert C. Cook, research assistant, of counsel), for the People.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Following a bench trial in the circuit court of St. Clair County, defendant, Martin C. Fitzpatrick, was convicted of the offense of burglary. He was sentenced to a term of three years' imprisonment. Defendant's sole contention on appeal is that the trial court erred in denying his motion to suppress his statement because it was obtained as a result of an illegal arrest.

At trial, defendant entered into a stipulation with the State as to what the State's evidence would be. On November 17, 1980, about $1,033 in business receipts were taken from Charles Beyersdorfer's truck which was parked behind his bakery located in the City of Fairview Heights, Illinois. Over objection of defendant, his written statement taken at the police station on December 15, 1980, in which defendant stated that he committed the offense, was admitted into evidence. Included in the stipulation was the transcript of the hearing on defendant's motion to suppress the statement.

The evidence at the suppression hearing shows that on December 15, 1980, at about 10 a.m., defendant, while walking along a street in Fairview Heights was stopped by Officer Patrick Prindable of the Fairview Heights Police Department. After learning defendant's name, Prindable asked defendant to accompany him to the police station because the detectives wanted to question him. Prindable did not explain why defendant was being investigated.

Defendant testified that he did not respond when Prindable asked him to come to the station. He further testified that while Prindable was questioning him, four additional officers arrived in two squad cars. Defendant stated that Prindable grabbed his arm and forced him into the

back seat of the squad car. Defendant also stated that he felt he could not refuse to go to the station.

According to Prindable, defendant agreed to come to the police station. Prindable denied that he forced defendant into the squad car. Although Prindable noticed several police cars in the vicinity, he did not recall if any of them stopped at the scene. Prindable testified that he did not intend to arrest defendant at that time. He further stated that he would not have forced defendant to accompany him if defendant had refused his request. It was undisputed that defendant was not told he was under arrest or not under arrest. Also, defendant was not told that he need not accompany the officer to the police station.

After being transported to the police station, defendant was placed in an interview room. He was not handcuffed, fingerprinted or photographed. Shortly thereafter, defendant was taken to Detective Dale Fredeking's office where he was given and waived his *Miranda* rights. Fredeking then told defendant that he thought defendant had committed the burglary of Beyersdorfer's truck. During the interrogation, which lasted about one hour, defendant orally admitted that he took the money from the truck. Fredeking then transcribed defendant's statement and advised him that he was under arrest.

The State conceded that the police officers had no probable cause to arrest defendant prior to his making the incriminating statement. Based on information received through an anonymous tip, Fredeking had instructed the officers of the department that the investigation division wanted to question defendant.

In denying the motion to suppress, the trial court found that defendant was free to leave the police station prior to giving his statement and that defendant was asked, not ordered, to accompany the officer to the police station. The trial court concluded, therefore, that defendant was not involuntarily detained or arrested until after he had made the statement.

On appeal, defendant argues that the trial court's findings are against the manifest weight of the evidence. The State replies that the trial court properly weighed the testimony and credibility of the witnesses. For the purpose of reviewing the issue presented on this appeal, we will accept as true the trial court's factual findings. Nonetheless, we hold that the conclusion reached by the trial court was erroneous.

The issue raised here was addressed recently by the supreme court in *People v. Townes* (1982), 91 Ill. 2d 32, 435 N.E.2d 103. In *Townes*, the police compiled a list of possible rape suspects on the basis of their knowledge of local residents with criminal records and the complainant's vague description of her assailant. The defendant's name was included on the list. Two police officers visited defendant at his home and told him that

they wanted to question him at the police station concerning an assault on a woman. The defendant was given the choice of accompanying the officers in their squad car or driving his car to the station; he chose to ride with the officers. After arriving at the station, an officer read to defendant the *Miranda* warnings and then the police conducted a series of interviews with defendant for a period of more than 12 hours. The *Miranda* warnings were read to defendant prior to each interview. During the final interview, the defendant made the incriminating statements that were introduced at trial; thereafter, he was formally charged.

In affirming the appellate court's reversal of defendant's conviction, the supreme court held that the defendant's fourth amendment rights were violated when, without probable cause, the police subjected him to a lengthy interrogation at the police station. The supreme court in *Townes*, citing *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248, reasoned that the defendant's detention resembled a traditional arrest, and a reasonable person would not have believed that he was free to leave. The court noted that, as in *Dunaway*, the defendant was never told that he was not under arrest or that he was free to refuse to accompany the officers. The court further stated that, as in *Dunaway*, the circumstances in *Townes* indicated that the police were interrogating the defendant in an attempt to obtain information sufficient to establish the probable cause necessary for an arrest.

We are of the opinion that *Townes* is dispositive of the instant appeal. As in *Townes*, defendant was not told that he was not under arrest or that he was free to leave. Although the trial court found that defendant was free to leave, the significant factor is the absence of any communications by the police officer to the defendant. Officer Prindable disclaimed any intention of arresting defendant and stated that he would not have arrested defendant if he had refused to accompany him. The officer's intentions, however, were never communicated to the defendant.

Further, as in *Townes*, the circumstances here indicated that the police interrogated defendant in the hope of obtaining sufficient information to establish probable cause for an arrest. It was conceded that the police lacked probable cause to arrest defendant. The investigation was focused on defendant as a result of information received through an anonymous tip. During the interview, Detective Fredeking told defendant that he thought defendant had committed the offense. Therefore, the seizure of defendant appears to have been improperly an " 'expedition for evidence.' " *Dunaway v. New York* (1979), 442 U.S. 200, 218, 60 L. Ed. 2d 824, 839, 99 S. Ct. 2248, 2259.

We note that the trial court found as significant to its denial of the motion to suppress the fact that defendant was asked, not ordered, to accompany the officer to the police station. This factor, however, does

not distinguish the instant case from *Townes*. In *Townes*, the defendant was told that the police wanted to question him at the station and he was given the choice of driving with the officers or driving his own car. The court in *Townes* did not attach significance to whether the officers initially requested or ordered defendant to accompany them. It was the totality of the circumstances that indicated that the detention of the defendant in *Townes* resembled a traditional arrest. Similarly, the circumstances here indicate that the detention of defendant resembled a traditional arrest and that a reasonable person would not have felt free to refuse the officer's request.

We hold that defendant's fourth amendment rights were violated when, without probable cause, the police subjected him to questioning at the station. Because the defendant's statements were a product of the unlawful detention, his motion to suppress should have been granted.

For the foregoing reasons, the judgment of the Circuit Court of St. Clair County is reversed.

Reversed.

KASSERMAN and HARRISON, JJ., concur.