THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM HARDWAY, Defendant-Appellant.

First District (5th Division)   No. 86—3459

Opinion filed November 20, 1987.

Ronald Rosenblum, of Bogen, Rosenblum & Associates, and Robert H. Aronson, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Lynda A. Peters, and Vickie E. Voukidis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of residential burglary and sentenced to five years' incarceration. On appeal he urges the following: (1) the trial judge committed reversible error when he denied his motion to suppress his confession, and (2) the prosecutor failed to prove him guilty beyond a reasonable doubt.

We reverse and remand.

At the hearing on defendant's motion to quash his arrest and suppress his confession the following testimony was adduced. The home of Maria Avonzado was burglarized at 10 p.m. on February 16, 1986. On February 19, Officer John Guswiler telephoned Avonzado and he and Officer Herbert then proceeded to defendant's home, which was next door to Avonzado.

Defendant testified that on February 19, 1986, at 9 a.m., he was awakened by his sister, who stated that there were two gentlemen upstairs waiting to speak to him. Defendant dressed and went upstairs. The two men arrested him, placed handcuffs on him, and took him to the police station at Belmont and Western. No arrest or search warrant was presented to defendant. At the police station defendant was placed in a room by himself for approximately one hour. During this time he was informed that he had been arrested for a robbery. This was the only conversation he had with police officers. Thereafter defendant was processed and taken to a cell at the station, where he remained for 13 hours. At 1 a.m. he was transported to the police station at 26th and California. Defendant testified that he never gave a statement to the police about his involvement in the burglary of his neighbor's home and he denied telling Officer Herbert that he had committed the burglary.

Defendant's sister, Jennifer Hardway, testified that on February 19, 1986, two men came to her house. Initially, the two men asked to see Jim Hardway, defendant's brother. When Miss Hardway informed the men that Jim Hardway was not at home, the men then asked to speak with defendant. Miss Hardway left the door open and proceeded downstairs to wake up defendant. When she returned the men were standing in the living room. She informed them that defendant would not wake up. The men responded that if defendant did not get out of bed, they would go downstairs to get him. Miss Hardway was successful in waking defendant the second time and accompanied him upstairs to where the men were waiting. According to Miss Hardway, the men did not identify themselves as police officers, explain their purpose for being there or present her with an arrest warrant or complaint. Miss Hardway further testified that defendant was immediately handcuffed and when she asked whether he had to accompany the men, they responded in the affirmative.

Officer John Guswiler testified that on February 19, 1986, he received a report prepared by a beat officer detailing the burglary of Maria Avonzado's home three days earlier. The report indicated that the victim believed defendant to be involved in the burglary. The report also indicated that on the night of the incident footprints were

found leading from the rear entrance of the victim's house to the rear entrance of the defendant's house and that the victim's stolen stereo equipment was found beneath defendant's back porch. After hearing the report, Guswiler telephoned Avonzado to confirm the facts cited in the report. Thereafter Guswiler and his partner, Officer Herbert, proceeded to defendant's home to investigate. The officer's knock on defendant's door was answered by a female who asked, "Who is it?" Guswiler responded "Police" and the door was opened. Guswiler asked whether defendant was at home and Miss Hardway responded "Yes" and proceeded to get defendant. When defendant appeared, Guswiler asked whether he would accompany them to the station at Belmont and Western. Defendant agreed and proceeded to finish dressing. According to Guswiler, defendant was neither handcuffed nor arrested at this time. At the station, between 10:30 and 10:45 a.m., defendant voluntarily gave the police a statement in which he confessed to committing the burglary. Defendant was arrested at that time.

Officer Herbert testified that on February 19, 1986, he accompanied Guswiler to defendant's home in furtherance of their investigation of the burglary of Avonzado's home. When defendant's sister answered the door, they identified themselves and asked to speak with William Hardway. Miss Hardway turned to get her brother and the officers followed her in. Because Miss Hardway did not say otherwise, Herbert believed he and Guswiler had been invited to come inside. When defendant arrived, Herbert informed him that he was a suspect in a burglary committed in the neighborhood and asked whether defendant would accompany them to the police station. At this point defendant was not arrested, handcuffed, or in any way restrained. At the station defendant voluntarily confessed to the commission of the burglary. Defendant was then handcuffed and placed under arrest. Herbert further testified that he was informed that the stereo had been dusted for fingerprints and the results were negative. Also, the State's Attorney's office was contacted only after defendant confessed. Also, it was admitted by the police officers that prior to the confession the officers had no probable cause to arrest defendant.

Following this testimony and arguments in support and in opposition, the trial court denied defendant's motion to quash his arrest and suppress his confession.

At trial Maria Avonzado testified that on February 16, 1986, at approximately 10 p.m., she was entering the vestibule of her apartment building when she heard a noise coming from the basement. She waited until the noise stopped before entering the basement. At that

time she observed that the basement window had been smashed and her stereo had been stolen. She called the police, who arrived immediately. As the officers were investigating the burglary outside the home, Avonzado noticed footprints in the snow leading from the rear of her house to the rear of defendant's house. Following the footprints to defendant's house, the police officers discovered the stolen stereo equipment under defendant's porch. She did not tell the police the night of the break-in that she thought defendant had committed the crime. The State also introduced defendant's confession.

After the close of the defendant's case and oral arguments on behalf of defendant and the State, the trial court found defendant guilty of residential burglary. On December 10, 1986, defendant was sentenced to five years' imprisonment.

OPINION

Defendant initially contends that the trial court erred in denying his motion to suppress his confession because his confession was obtained as a result of an unlawful arrest. In support of this contention defendant maintains that he was arrested at his home, where the police officers concededly did not have probable cause.

■■ We find that the State's evidence establishes that defendant was unlawfully arrested at his home. After reviewing the police report, Guswiler and Herbert went to defendant's home. The officers entered the house even though they were not explicitly asked to come inside. The officers deny handcuffing defendant. The officers asked defendant to accompany them to the police station because they wanted to question him about a burglary committed in the neighborhood.

The officers testified that defendant agreed to go to the police station. They denied that defendant was in any way restrained. The officers testified that they did not intend to arrest defendant at that time because they lacked probable cause. However, under cross-examination, Guswiler testified that defendant was placed in "custody" at the home. It is undisputed that defendant was not told he was under arrest or not under arrest. Also, defendant was not told that he need not accompany the officers to the station.

At the police station defendant was placed in an investigation room. Guswiler read defendant his *Miranda* rights and asked him whether he understood those rights. Defendant indicated that he did in fact understand his rights. Herbert was also present with defendant during this questioning. Defendant did not request an attorney nor did he remain silent. According to the officers, when Guswiler

asked defendant whether he had any questions about his rights, defendant made a confession. He admitted that he broke Avonzado's window, entered the basement, took the stereo and placed it at the rear of his house. He stated that he committed the robbery because he had been drinking alcohol.

■■ The issue raised is whether defendant's detention resembled a traditional arrest and a reasonable person would not have believed that he was free to leave. (*People v. Townes* (1982), 91 Ill. 2d 32, 435 N.E.2d 103.) We are of the opinion that defendant reasonably believed he was not free to leave. The police officers testified that upon entering defendant's home they did not believe that they had probable cause to arrest defendant. Therefore, the police officers could not have intended to arrest defendant had he denied their request to accompany them to the police station. These intentions, however, were never communicated to the defendant. See *People v. Fitzpatrick* (1982), 107 Ill. App. 3d 876, 438 N.E.2d 222.

■■ Further, it is apparent from the testimony adduced that the police interrogated defendant in hope of obtaining sufficient information to establish probable cause for an arrest. The officers themselves testified that they lacked probable cause to arrest defendant before his confession. The investigation was focused on defendant as a result of footprints in the snow leading to defendant's house. The detention of defendant was in important respects indistinguishable from a traditional arrest and accordingly must be supported by probable cause because a reasonable person would not have felt free to refuse the officer's request. (See *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248.) Because the confession was a product of the unlawful detention, we find that the trial court erred in denying defendant's motions to quash his arrest and suppress his confession.

■■ ■ Defendant next contends that he was not proven guilty beyond a reasonable doubt. The victim testified that she heard noises in her basement. She called the police. They arrived within seconds. Her basement window was broken and her stereo was missing. There were footprints in the snow leading to the back of defendant's house. The stereo was found under the defendant's back porch. Despite defendant's testimony to the contrary, the arresting officers testified that defendant subsequently confessed to committing the crime. It is well settled that when a case is tried without a jury, it is the responsibility of the trial judge to determine the credibility of the witnesses and the weight to be given their testimony and where the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact who heard the evidence. (*People v. Woods*

(1980), 81 Ill. 2d 537, 410 N.E.2d 866.) We hold the evidence was sufficient to support the trial judge's finding.

Based on the foregoing we reverse and remand this cause to the trial court.

Reversed and remanded.

SULLIVAN, P.J., and MURRAY, J., concur.